**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4038

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TIMEIKI HEDSPETH,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, District Judge. (4:16-cr-00049-RAJ-LRL-6)

Submitted: January 31, 2019                    Decided: February 14, 2019

Before KING and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Mark Diamond, Richmond, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Brian J. Samuels, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Timeiki Hedspeth for her participation in a "Mystery Shopper" scheme in which Hedspeth and her coconspirators caused unsuspecting victims to negotiate counterfeit money orders and cashier's checks at financial institutions under the guise that they had been chosen to evaluate the quality of certain money transmission services.[1] Hedspeth now appeals, challenging the district court's denial of her Fed. R. Crim. P. 29 motion for a judgment of acquittal and certain evidentiary rulings made at trial. She also contests the calculation of her Sentencing Guidelines range and the order of restitution imposed by the district court. For the reasons that follow, we affirm.

"We review de novo a district court's denial of a Rule 29 motion." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). "We must sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *Id.* (defining substantial evidence). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017) (internal quotation marks omitted).

With little specificity, Hedspeth broadly challenges the sufficiency of the evidence supporting her convictions. However, our review of the record leads us to conclude that

---

[1] Specifically, the jury convicted Hedspeth of conspiracy to commit mail fraud, bank fraud, and wire fraud and two counts each of mail fraud, bank fraud, wire fraud, and aggravated identity theft. The district court sentenced Hedspeth to 175 months' imprisonment and ordered her to pay $1,294,034.52 in restitution.

the Government produced ample evidence of Hedspeth's participation in the conspiracy, including testimony from two of her coconspirators, extensive incriminating email correspondence between Hedspeth and Babajide Fabiye ("Jide"), the conspiracy's mastermind, and proof that Hedspeth ordered over 1.5 million specialty checks and was the intended recipient of hundreds of counterfeit money orders intercepted by law enforcement. In addition, with respect to the two victims relevant to Hedspeth's charges,[2] the evidence showed that the victims' names were among the names of potential victims sent by email from Jide to Hedspeth; that Jide also sent a printable mailing label for one victim and a printable cashier's check for another; that counterfeit money orders received by one victim contained Hedspeth's handwriting; and that the fraudulent cashier's check cashed by the other victim was printed on specialty check paper that Hedspeth had ordered. In view of this evidence, we also reject Hedspeth's claims that her email correspondence with Jide was insufficient to prove her involvement in the conspiracy and that the jury convicted her based solely on her admissions and the testimony of her coconspirators. Finally, contrary to Hedspeth's argument, we conclude that the Government presented sufficient evidence from which the jury could find that Hedspeth used the victims' means of identification—a necessary element of her convictions for aggravated identity theft. *See* 18 U.S.C. § 1028A(a)(1) (2012).

---

[2] The Government prosecuted Hedspeth for her conduct relating to 2 victims; the conspiracy actually defrauded 492 people.

Next, we turn to the district court's evidentiary rulings, which we review for abuse of discretion. *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). In assessing whether the district court properly limited a witness' testimony, "we consider whether the district court acted in an arbitrary fashion, or restricted [the witness'] testimony to a degree not warranted by the demands of evidentiary and trial management." *United States v. Woods*, 710 F.3d 195, 201 (4th Cir. 2013). In addition, "[d]istrict courts . . . retain wide latitude" to limit cross-examination "that is repetitive or only marginally relevant." *United States v. Ayala*, 601 F.3d 256, 273 (4th Cir. 2010) (internal quotation marks omitted).

We discern no abuse of discretion in the district court's decision to limit defense counsel's line of questioning that, as counsel conceded, was meant to be confusing and was only marginally relevant. We also detect no impropriety in the court's management of counsel's cross-examination of Hedspeth's ex-husband. Hedspeth complains that defense counsel was unable to fully cross-examine her ex-husband about a child custody dispute that, in counsel's view, provided the ex-husband with a motive to lie when identifying Hedspeth's handwriting. However, while making clear its desire to avoid relitigating the custody battle, the district court did permit defense counsel to briefly explore this issue, thus exposing the jury to Hedspeth's concerns about her ex-husband's credibility. Lastly, we are unpersuaded by Hedspeth's challenge to the admission of copies of various checks and money orders introduced at trial. Because Hedspeth did not genuinely dispute their authenticity, the duplicates were "admissible to the same extent as the original[s]." Fed. R. Evid. 1003.

As to Hedspeth's sentencing arguments, we review only for plain error because she failed to raise these issues in the district court. *United States v. Fluker*, 891 F.3d 541, 552 n.6 (4th Cir. 2018) (criminal history points); *United States v. Stone*, 866 F.3d 219, 225 (4th Cir. 2017) (restitution); *United States v. Davis*, 855 F.3d 587, 595 (4th Cir.) (amount of loss), *cert. denied*, 138 S. Ct. 268 (2017). To establish plain error, Hedspeth must demonstrate "(1) that the district court erred, (2) that the error was plain, and (3) that the error affected [her] substantial rights." *United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018). Even if she satisfies these requirements, we should not notice the error unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Hedspeth first contests the addition of two criminal history points under U.S. Sentencing Guidelines Manual § 4A1.1(d) (2016), arguing that she did not participate in the conspiracy while under a term of supervision. "Section 4A1.1(d) of the Guidelines adds two points to a defendant's criminal history score if the defendant committed the instant offense while under any criminal justice sentence, including . . . supervised release . . . ." *United States v. Brown*, 909 F.3d 698, 700 (4th Cir. 2018) (internal quotation marks omitted). Here, except for one conclusory objection, Hedspeth did not oppose the presentence report, which the district court adopted without change. In the PSR, the probation officer alleged that a state court placed Hedspeth on community supervision in June 2016 and that she continued her involvement in the Mystery Shopper scheme through August 2016. Because Hedspeth did not introduce any evidence at sentencing, she failed to carry her burden of rebutting the PSR's allegation that her

5

participation in the underlying conspiracy overlapped with her supervision term. *See United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017) ("[T]he defendant bears an affirmative duty to show that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." (internal quotation marks omitted)). As a result, the district court was "free to adopt the findings of the presentence report without more specific inquiry or explanation." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (brackets and internal quotation marks omitted). Accordingly, the court did not plainly err in adding two criminal history points under § 4A1.1(d).

Hedspeth also disputes the offense level calculation, arguing that the district court miscalculated the loss amount. "[Section] 2B1.1(b) escalates the applicable offense level based on the amount of total loss attributable to the defendant's conduct." *United States v. Jones*, 716 F.3d 851, 859 (4th Cir. 2013). "In calculating the total loss attribution, a district court 'need only make a reasonable estimate of the loss.'" *Id.* at 860 (quoting USSG § 2B1.1 cmt. n.3(C)). Generally, "loss is the greater of actual loss or intended loss," USSG § 2B1.1 cmt. 3(A), and "'[i]ntended loss' . . . means the pecuniary harm that the defendant purposely sought to inflict," USSG § 2B1.1 cmt. 3(A)(ii).

Based on the value of counterfeit checks and money orders attached to over 1600 emails received by Hedspeth, the PSR indicated an intended loss of approximately $38 million. We conclude that this was a reasonable estimate of the intended loss and that the

6

district court therefore committed no plain error in imposing a 22-level enhancement for a loss exceeding $25 million. *See* USSG § 2B1.1(b)(1)(L).[3]

Lastly, Hedspeth asserts that the district court neglected to consider her ability to pay restitution. However, because restitution was required under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (2012), Hedspeth's financial circumstances were irrelevant to the court's restitution determination. *United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013). We also detect no plain error in the amount of restitution ordered, given that the court adopted the unopposed findings of the PSR, which indicated the loss amount incurred by each of the conspiracy's 492 victims.

Accordingly, we affirm the district court's judgment and restitution order. We deny Hedspeth's motion for release pending appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3] Hedspeth contends that her trial counsel rendered ineffective assistance by failing to preserve her Guidelines arguments for our review. However, "[u]nless an attorney's ineffectiveness conclusively appears on the face of the record," ineffective assistance claims generally are not cognizable on direct appeal. *United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016). Here, because the record does not conclusively establish ineffective assistance of counsel, "this claim should be raised, if at all, in a 28 U.S.C. § 2255 [(2012)] motion." *Id.* at 508.